IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EDGEFIELD HOLDINGS as successor   §
in interest to Regions Bank,           §
                                    §
        Plaintiff,            §
                                    §
V.                                 §          No. 3:17-mc-74-N-BN
                                    §
KENNETH J. GILBERT, *et al.*,    §
                                    §
        Defendants.         §

## MEMORANDUM OPINION AND ORDER

Defendant Kenneth J. Gilbert and Non-Party Helen K. Gilbert (collectively, the "Gilberts") have filed a Motion to Quash Subpoena and Objection to Document Requests in response to a subpoena (the "Subpoena" [Dkt. No. 15, Ex. 1]) issued to Non-Party Helen K. Gilbert by Plaintiff Edgefield Holdings as successor in interest to Regions Bank ("Edgefield" or "Plaintiff"). *See* Dkt. No. 2 (the "Motion to Quash").

United States District Judge David C. Godbey has referred the Motion to Quash to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 5.

Edgefield filed a response, *see* Dkt. No. 14, and the Gilberts filed a reply, *see* Dkt. No. 18.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part the Gilberts' Motion to Quash Subpoena and Objection to Document Requests [Dkt. No. 2].

# Background

As Edgefield explains the background to the Motion to Quash,

[o]n July 8, 2010, the United States District Court - Eastern District of Louisiana, in Civil Action No. 2:09-cv-03560, entered a judgment against Defendant KENNETH J. GILBERT in favor of Regions Bank in the amount of $1,348,099.00 plus interest, attorney's fees, and expenses (hereinafter the "Louisiana Federal Judgment"). The Louisiana Federal Judgment was subsequently assigned to Plaintiff.

In an unrelated case, on November 29,2010, the 415th Judicial District Court, Parker County, Texas, in Cause Number CV-10-0929, entered a final judgment in favor of Regions Bank against Defendant KENNETH J. GILBERT in the amount of $1,972,645.58 plus interest, late charges, attorney's fees, and court costs (hereinafter the "Texas State Judgment"). The Texas State Judgment was subsequently assigned to Plaintiff.

On December 17, 2010, Regions Bank attempted to domesticate the Louisiana Federal Judgment in Parker County, Texas but did not pursue enforcement of the Louisiana Federal Judgment in Texas state court thereafter. Nevertheless, the domestication in state court of the Louisiana Federal Judgment is invalid because an exemplified copy of the Louisiana Federal Judgment was not filed as required by Texas law. TEX. CIV. PRAC. & REM CODE § 35.003.

On April 19, 2016, Plaintiff commenced enforcement of the Texas State Judgment by serving Defendant KENNETH J. GILBERT with post-judgment discovery requests. Plaintiff further attempted to collect the Texas State Judgment by employing enforcement tools allowed by law, including garnishment and third-party discovery. Through postjudgment discovery in the Texas State Judgment matter, Plaintiff discovered that Defendant KENNETH J. GILBERT has been fraudulently transferring his community property income to his wife, HELEN K. GILBERT, and non-party entities owned and controlled by the GILBERTS.

On or about April 6, 2017, Plaintiff acquired Regions Bank's interest in the Louisiana Federal Judgment and filed its Motion to Substitute Parties-in-Interest in the Eastern District of Louisiana case. Thereafter, on May 12,2017, the Eastern District of Louisiana Court entered an order allowing Plaintiff to substitute as judgment creditor in accordance with Federal Rule of Civil Procedure 25(c).

On September 29, 2017, Plaintiff registered the Louisiana Federal Judgment in this Court pursuant to 28 U.S.C. § 1963.

On November 13, 2017, after proper notice, Plaintiff issued its

Subpoena to Non-Party HELEN K. GILBERT (hereinafter the "Subpoena"). A true and correct copy of the Subpoena is attached to Plaintiffs accompanying Appendix as Exhibit "1" [Appendix pgs.3-161 and incorporated herein by reference.

On December 5, 2017, counsel for the GILBERTS proposed producing certain documents responsive to the Subpoena in exchange for Plaintiff s agreement to enforce the Louisiana Federal Judgment in Parker County state court only. Plaintiff agreed regarding the production of certain documents but did not agree regarding venue.

Dkt. No. 14 at 2-4.

But the Gilberts contend that

[t]his case was commenced for the sole purpose of compelling post-judgment discovery from a non-judgment debtor, Helen K. Gilbert ("Mrs. Gilbert"). However, such discovery should be undertaken through the lawsuits currently pending in Parker County, Texas, not in federal court in Dallas. Parker County is where (a) the [Gilberts] reside, (b) Edgefield's judgments were entered or are registered, (c) Edgefield has been conducting collection efforts since 2016, (d) Edgefield, and its predecessor in interest have taken extensive discovery from the judgment debtor, Kenneth J. Gilbert ("Mr. Gilbert"), and (e) Edgefield issued the very same post-judgment discovery request to Mrs. Gilbert the day before this action was commenced. Additionally, the documents requested in the Subpoena should be narrowed and specifically tailored to the facts of the matter to seek (a) information about assets that could be used to satisfy Edgefield's debt, rather than the carpet-bombing approach of sending 112 broad requests for information about Mrs. Gilbert's separate and solely managed property, and (b) information not already provided by Mr. Gilbert or available from, the judgment debtor.

Edgefield allegedly holds two judgments taken against Mr. Gilbert by Regions Bank. One was entered by the 4151 Judicial District Court of Parker County, Texas on November 29, 2010 in the amount of $1,972,645.58 ("Judgment One"). The other was entered by the United States District Court for the Eastern District of Louisiana on July 8, 2010 in the amount of $1,348,099.00 ("Judgment Two"). As discussed below, Regions Bank, Edgefield's alleged assignor, has already domesticated Judgment Two in Parker County.

Edgefield has no judgments against Mrs. Gilbert. Nevertheless, Edgefield has twice sent the same set of 112 document requests to Mrs. Gilbert, asking for a broad range of financial and personal information, including documents that pertain to her separate property and her solely

managed community property. The document production Edgefield seeks to compel is, to a large extent, irrelevant and not discoverable, because Mrs. Gilbert's separate and solely managed community property are not subject to her husband's debts. The document production is also overly burdensome. Because the discovery sought is extremely broad, Mrs. Gilbert will incur substantial expense providing extensive information in furtherance of the collection of a debt she does not owe about assets that are not liable for her husband's debt or to protect herself from having to do so. The Subpoena is also unduly burdensome because it is unnecessary. Edgefield also seeks to compel production of documents and information that Edgefield has already received from Mr. Gilbert or that it was given the opportunity to inspect and chose not to.

The Court should order Edgefield to pay Mrs. Gilbert's expenses in moving to quash the Subpoena, because it did not take reasonable steps to avoid imposing undue burden or expense on Mrs. Gilbert; rather, the Subpoena is part of a pattern intended to harass the [Gilberts], especially Mrs. Gilbert. In addition to the Subpoena, Edgefield has taken extensive discovery from Mr. Gilbert and has made other extensive production demands on Mrs. Gilbert. Edgefield has demanded to inspect and video the [Gilberts'] home, including private areas, which the [Gilberts] agreed to, but Edgefield never did an inspection. Edgefield has unnecessarily used four different courts to assist in collection, which has increased costs and stress to the [Gilberts].

Edgefield has issued a notice of subpoena containing 112 document requests directed to Mrs. Gilbert in one of the Parker County actions, but decided not to serve the subpoena issued from the court in the place of her residence. Instead, the very next day, Edgefield registered Judgment Two in this Court and now seeks to compel production of the same 112 documents through this Court. This forum shopping and procedural maneuvering is intended to harass Mrs. Gilbert and to increase expense, and is therefore an abuse of the Federal Rules of Civil Procedure.

Dkt. No. 2 at 1-3. And the Gilberts offer their own procedural background to their

Motion to Quash:

On November 29, 2010, Regions Bank obtained Judgment One against Kenneth J. Gilbert in *Regions Bank v. Kemmerer BLM, L.L.C. and Kenneth J. Gilbert* from the 4151 Judicial District Court of Parker County in Cause No. CV-10-0929 , [Exhibit 1; App . 001 to 003). On March 10, 2016, Regions Bank is alleged to have assigned Judgment One to Edgefield.1 Edgefield as taken many actions to obtain post-judgment discovery and to collect Judgment One, and which are described below.

....

To collect Judgment One, in April 2017, Plaintiff filed in Parker County an Application and Affidavit for Writ of Garnishment (the "Garnishment Action") against UBS AG and UBS Financial Services, Inc. ("UBS") in the 4151 Judicial District of Parker County in Cause No. CV-17-0406. [Exhibit 2; App. 004 to 009]. One of the accounts at UBS was the [Gilberts'] joint checking account. [Exhibit 35; App.332]. Another of the accounts is Mr. Gilbert's Individual Retirement Account (the "IRA"). [Exhibit 35; App. 332]. The third account is held for the benefit of the [Gilberts] in an account in the name of the Gilbert Real Estate Brokers Defined Benefit Pension Plan (the "Pension Plan"). [Exhibit 35; App. 332]. The Garnishment Action was resolved with Edgefield agreeing not to collect any of the Pension Plan or IRA funds, but taking the funds in the [Gilberts'] joint checking account at UBS. [Exhibit 3; App. 010 to 011].

....

To collect Judgment One, on June 28, 2016, Plaintiff filed in Parker County Edgefield Holdings, LLC, as assignee of Regions Bank v. Kenneth J. Gilbert, Helen K. Gilbert, Chandler Estates, LTD., and Parker County Real Estate Investments, Inc. in Cause No. CV16- 0784 in the 43rd Judicial District Court of Parker County, Texas {the "Fraudulent Transfer Action"). [Exhibit 4; App. 012 to 021]. Edgefield asserted that transfers of funds into the Pension Plan for the benefit of the [Gilberts] constituted fraudulent transfers under Texas law. [Exhibit 4; App. 017 to 019].

[The Gilberts] made counterclaims in the Fraudulent Transfer Action, one of which was a counterclaim for declaratory judgment that the Pension Plan account at UBS is exempt from execution. [Exhibit 5; App. 022 to 026]. On August 3, 2017, [the Gilberts] sought summary judgment on the counterclaim for declaratory judgment that the Pension Plan is exempt from execution based on the Employee Retirement Income Security Act (29 U.S.C. §§1001-1461) ("ERISA") . [Exhibit 6; App. 027 to 038].

On August 7, 2017 , Edgefield filed a Notice of Removal in the United States District Court for the Northern District of Texas, Fort Worth Division, improperly casting itself as the defendant for purposes of 28 U.S.C. §§ 1441(a) based on the [Gilberts'] counterclaim. [Exhibit 7; App. 039 to 046]. After considerable and unnecessary expense to the [Gilberts], Edgefield conceded that a plaintiff who chose its own venue for a suit cannot later remove an action under 28 U.S.C. §1441(a). The parties filed an agreed motion to remand on August 21, 2017 , which was granted by the Court. [Exhibits 8 and 9; App. 047 to 050].

Once the fraudulent transfer action was remanded to the 43rd Judicial District Court in Parker County and a hearing was set on the

[Gilberts'] summary judgment motion, on September 14, 2017, Edgefield asked to transfer the case it filed in the 43rd Judicial District Court of Parker County to the 4151 Judicial District Court of Parker County. [Exhibit 10; App. 051 to 063]. The transfer request was denied. [Exhibit 11; App. 064]. Then, on September 18, 2017, Edgefield non-suited its claims in the Fraudulent Transfer Action in an attempt to get the 43rd Judicial District Court to dismiss the entire action, including [the Gilberts'] counterclaims. [Exhibit 12; App. 065 to 066]. That request was denied. [Exhibits 13 and 14; App. 067 to 069]. Finally, on September 28, 2017, the 43rd Judicial District Court of Parker County held a hearing on the [Gilberts'] summary judgment request, granting the motion on October 28, 2017 [Exhibit 15; App. 070 to 071], and entering a final judgment for the [Gilberts] on November 2, 2017. [Exhibit 16; App. 072 to 073].

As discussed below, Edgefield served a notice of subpoena on Mrs. Gilbert the same day as the hearing on the summary judgment motion.
....

In another attempt to collect Judgment One, on May 19, 2017, Edgefield filed a motion in the 4151 Judicial District Court of Parker County, Case No. CV-10-0929, to inspect the [Gilberts'] home in Aledo and to videotape the inspection, including the opening, videotaping and inventorying of all drawers and closets. [Exhibit 17; App. 074 to 075]. On June 22, 2017, Edgefield amended its inspection request. [Exhibit 18; App. 076 to 078]. The [Gilberts] responded and sought protection from that request on June 6, 2017. [Exhibit 19; App. 079 to 082]. By July 28, 2017, the parties negotiated a resolution by agreeing to less onerous terms for inspection and videotaping that would have more respect for the [Gilberts'] privacy. [Exhibit 20; App. 083 to 086]. After causing the [Gilberts] to incur significant expense and after creating a stressful situation for the [Gilberts], Edgefield never bothered to do the inspection. The only rational conclusion to draw from this is that Edgefield had no real interest in inspecting the [Gilberts'] residence and pursued the inspection solely as a means of harassing the [Gilberts], and in particular Mrs. Gilbert.
....

Aside from the home inspection request discussed above, Edgefield (and its predecessor, Regions Bank) have done extensive post-judgment discovery of Mr. Gilbert and related entities in the 415th Judicial District Court of Parker County, Texas in Case No. 10-0929.

On February 2, 2011, Mr. Gilbert responded to requests for production and interrogatories served on him by Regions Bank, answering 38 interrogatories about his income and assets and providing documents. [Exhibit 21; App. 087 to 107].

In the same Parker County case, on April 25, 2016, Edgefield served eighty-four (84) interrogatories on Mr. Gilbert about his income and assets, which he answered on May 23, 2016 . [Exhibit 22; App. 108 to 131].

In the same Parker County case, on July 12, 2016, Edgefield sent a notice of subpoena to Ray & Associates, PLLC (Mr. Gilbert's counsel and accountant) seeking seventy- six (76) document requests about Mr. Gilbert's assets, which Ray & Associates responded to on August 9, 2016. [Exhibit 23; App. 132 to 138].

In the same Parker County case, on September 29, 2016, Edgefield sent a notice of subpoena to third-party Morgan Stanley Smith Barney, LLC seeking eleven (11) categories of documents related to accounts in the name of Mr. Gilbert. [Exhibit 24; App. 139 to 157].

In the same Parker County case, on May 19, 2017, Edgefield sent a second post-judgment request for production to Mr. Gilbert requesting ten (10) categories of information about his Pension Plan, which Mr. Gilbert answered. [Exhibit 25; App.158 to 165].

In the same Parker County case, on June 8, 2017, Edgefield deposed Mr. Gilbert for a full day. [Exhibit 26; App. 166 to 221]. In that deposition, Edgefield learned the answers to most of the questions it has asked through the Subpoena. Mr. Gilbert testified that he rents a small apartment in Dallas where he stays if he is unable to make the drive home to Aledo . Mr. · Gilbert also testified that the only real property the [Gilberts] own is their home in Aledo, where the [Gilberts] both reside and which does not have a mortgage. Mr. Gilbert testified about the [Gilberts'] homeowners' policy and property taxes. Mr. Gilbert testified that his income is deposited into certain accounts, and that he periodically transfers money to his wife to pay household expenses and other bills from her checking account. Mr. Gilbert testified about his bank statements, his income, his wife's income, and the [Gilberts'] joint tax returns. Mr. Gilbert testified that Mrs. Gilbert has a trust and oil and gas revenues that she inherited from her father, and that Mr. Gilbert has no interest in those assets. He also testified that sometimes Mrs. Gilbert uses her trust assets to pay bills and other expenses . He testified about the personal community property the [Gilberts] own. And, as discussed above, Edgefield was permitted the opportunity inspect those and did not.

In the same Parker County case, on June 15, 2017, Edgefield served subpoenas on Heritage Title Company of Austin, Inc., Arne Ray, and FNG, LLC, seeking thirty-nine (39) categories of documents about the assets of Mr. Gilbert, Oxford Ventures , LLC, Parker Real Estate Investments, Inc., Chandler Estates, Carotex Holdings, LLC, Lufkin SSA, LLC, Gilbert Real Estate Brokers, and Kay Gilbert Real Estate Brokers. They also included fourteen (14) request for documents about a property

in Lufkin, Texas. [Exhibit 27; App . 222 to 249].

In the same Parker County case, on June 19, 2017, Edgefield sent a notice of subpoena to Prosperity Bancshares seeking information about accounts and loans of Mr. Gilbert. [Exhibit 28; App. 250 to 254].

....

On September 28, 2017, Edgefield sent a notice of subpoena to Helen K. Gilbert with 112 document requests, although it is unclear whether Edgefield intended to issue the subpoena out of the 4151h or the 43rd Judicial District Court of Parker County. [Exhibit 29; App. 255 to 283]. The requests are exactly the same as those at issue here.

Without so much as a courtesy call, Edgefield decided not to serve the subpoena issued from Parker County. Instead, it registered Judgment Two in this Court the very next day and issued the Subpoena out of this Court.

....

Judgment Two was entered on July 9, 2010 in favor of Regions Bank and against Kenneth J. Gilbert in the principal amount of $1,348,099.00 in the United States District Court for the Eastern District of Louisiana in Civil Action No. 09-3560. Regions Bank domesticated Judgment Two in the 4151 District Court of Parker County in Case No. 10-2109 on December 17, 2010. [Exhibit 30; App. 284 to 293].

On September 29, 2017, purporting to be the assignee of Regions Bank, Edgefield registered Judgment Two in this Court. [Exhibit 31; App. 294 to 296].

On November 2, 2017, Edgefield sent a Notice of Subpoena to Non-Party Helen K. Gilbert. Compelling the Production of Documents and Tangible Things Without Deposition After Judgment along with a copy of the Subpoena with 112 requests for production. [Exhibit 32; App. 297 to 323]. This is the same 112 production requests that were the topic of the earlier notice of subpoena served in Parker County.

On November 13, 2017, counsel for the [Gilberts] agreed to accept service of the Subpoena by email for Mrs. Gilbert.

*Id.* at 3-9 (footnote omitted).

The Gilberts "seek an order quashing the Subpoena, sustaining their Objections, directing Edgefield to issue post-judgment discovery in Parker County, and directing Edgefield to tailor their document requests to Mrs. Gilbert to seek information only about jointly managed community property or any property she holds for or receives

from her husband." Dkt. No. 3 at 8. They "also seek payment of Mrs. Gilbert's attorneys' fees and expenses by Edgefield for their abusive post- judgment discovery against a non-judgment debtor, and ask the Court to set a hearing at which [the Gilberts] can present evidence of those attorneys' fees and expenses." *Id.*

Edgefield responds that

> [t]he Court should deny Defendant KENNETH J. GILBERT and Non-Party HELEN K. GILBERT's (hereinafter sometimes collectively referred to as the "GILBERTS") Motion to Quash because Plaintiff is entitled to all of the post-judgment discovery served on HELEN K. GILBERT (judgment debtor's wife holding community property) pursuant to federal law and Texas law.
>
> The Court should further deny the GILBERTS' motion because there is no undue burden on the GILBERTS to produce. In fact, the GILBERTS have offered to produce certain documents in exchange for Plaintiff to agree to enforce the Louisiana Federal Judgment in Parker County. As such, on one hand, the GILBERTS are dangling responses to the Subpoena in order to induce Plaintiff to agree to a certain forum; on the other hand, the GILBERTS are raising groundless, shielding objections to the Subpoena in an attempt to force enforcement in state court and deny Plaintiff the discovery it is entitled to under the law. Nonetheless, the fact remains that the GILBERTS are ready to produce responsive documents, which clearly demonstrates that the Subpoena requests are not imposing an undue burden on the GILBERTS.
>
> Further, the Court should deny the GILBERTS' Motion because the GILBERTS rely on misrepresentations to the Court regarding the applicable law; distortion of the facts of this case; groundless inferences; and meritless, shielding objections as a way to avoid the inconvenience of dealing with Defendant KENNETH J. GILBERT's multi-million dollar legal obligation to Plaintiff.

Dkt. No. 14 at 1-2 (emphasis omitted).

In reply, the Gilberts explain that they

> believe that the Plaintiff did not comply with this Court's December 22, 2017 electronic order to file a "complete response" to the Motion to Quash. Accordingly, many of issues raised by the Gilberts in the Motion to Quash have not been addressed by the Plaintiff.

....

The Plaintiff failed to meet its initial burden of serving an appropriate Subpoena on Mrs. Gilbert. It did so by not directing the questions to what it needed, but by asking for 112 production requests to harass Mrs. Gilbert. And, the Plaintiff has used this Court and this venue to exacerbate that harassment.

The Plaintiff also failed to file a complete answer to the Motion to Quash as required by the Court.

For the reasons stated herein, the Gilberts ask that the Court dismiss this action with prejudice. The Plaintiff can take the same discovery (and has done so) in Parker County State Court.

Dkt. No. 18 at 1, 7.

## Legal Standards

Under 28 U.S.C. § 1963, "[a] party may register the final judgment of one district court with another district court if certain conditions are met." *Hoffart v. Wiggins*, 577 F. App'x 384, 387 (5th Cir. 2014). Section 1963 states that "[a] judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown"; that "[s]uch a judgment entered in favor of the United States may be so registered any time after judgment is entered"; and that "[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963.

"28 U.S.C. § 1963 allows a party to register one federal court's money judgment in another federal district court as a precursor to enforcement of the original judgment

in the latter court." *Young Again Prods., Inc. v. Acord*, 431 F. App'x 308, 309 (5thh Cir. 2011). Section 1963 was adopted to simplify and facilitate the enforcement of federal judgments, to eliminate the necessity and expense of a second lawsuit, and to avoid impediments like diversity of citizenship that new federal litigation might otherwise encounter. *See Home Port Rentals, Inc. v. Int'l Yachting Grp., Inc.*, 252 F.3d 399, 407-08 (5th Cir. 2001).

And, "when a money judgment rendered in one federal district court is registered in another federal district court at a time when the original judgment is still enforceable under the laws of both states, registration truly is the equivalent of a new judgment of the registration court for purposes of enforcement in the registration district. "*Id.* at 405 (emphasis omitted). Under Section 1963, a federal court's judgment may be registered and enforced in multiple federal districts. *See* 28 U.S.C. § 1963 ("A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien."); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000) (noting that "[a] judgment may be registered in many districts").

Federal Rule of Civil Procedure 69(a)(1) provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise," and that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." FED. R. CIV. P. 69(a)(1). "Federal law requires that when a prevailing party seeks to collect a judgment in another state

where the judgment debtors' assets are located, that collection action must proceed according to the laws of the state where the property is located." *Hoffart v. Wiggins*, 600 F. App'x 261, 263 (5th Cir. 2015).

Together, "Rule 69 and 28 U.S.C. § 1963 contemplate that [a judgment creditor] could register the district court's final judgment in another federal district court and initiate collection proceedings." *Hoffart*, 577 F. App'x at 387; *accord Nieman v. Hale*, No. 3:14-mc-38-B-BN 2015 WL 5896064, at *3 (N.D. Tex. Aug. 4, 2015) (explaining that "[t]he appropriate procedure for enforcing a money judgment in this Court from another federal court is to register the judgment as a new action pursuant to 28 U.S.C. § 1963"), *rec. adopted*, 2015 WL 5896125 (N.D. Tex. Oct. 6, 2015).

Federal Rule of Civil Procedure 69(a)(2) "governs the procedure for post-judgment discovery in federal courts." *Natural Gas Pipeline Co. of Am. America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1405 (5th Cir. 1993). Because a judgment registered under Section 1963 "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner," 28 U.S.C. § 1963, post-judgment discovery under Rule 69(a)(2) is available to a judgment creditor in the district in which the judgment is registered, *see generally Hoffart v. DWD Contractors, Inc.*, No. 1:08-CV-46, 2014 WL 11310053, at *1 (E.D. Tex. Aug. 21, 2014) ("However, after closer inspection of Judge Simon's order, the relief granted therein, and the Fifth Circuit's recent affirmance of this court's opinion that the execution procedures of Oregon apply to a registered judgment there, *Hoffart v. Wiggins, et. al.*, [577 F. App'x 384,] No. 14-40207, 2014 WL 3908144 (5th Cir. Aug. 12, 2014), the court

finds from this point forward that all discovery disputes regarding the collection and execution of the registered Oregon judgment should occur in the United States District Court for the District of Oregon. This court will only preside over disputes involving the collection and execution of the Final Judgment for property located in Texas."), *aff'd, Hoffart v. Wiggins*, 600 F. App'x at 263 ("Because this court's opinion in the prior appeal compels the result here as a matter of law of the case, and because Mr. Hoffart does not indicate that there is any Texas property from which he can seek to collect the judgment, the magistrate judge's order denying further discovery is correct."); *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 424-25, 436-27 (5th Cir. 2013); *Cadle Co. v. Neubauer*, 562 F.3d 369, 370 (5th Cir. 2009).

Rule 69(a)(2) provides that, "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(2). "Rule 69 allows post-judgment discovery to proceed according to the federal rules governing pre-trial discovery, or according to state practice." *Natural Gas*, 2 F.3d at 1405. "A judgment creditor thus has the choice of which method to use," but, if the creditor "clearly indicate[s] its intent to pursue postjudgment discovery in the manner provided by the Federal Rules of Civil Procedure," "Texas law does not apply to [post-judgment] discovery requests" and, "[i]nstead, federal law will apply." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 171-72 (5th Cir. 1995).

"The scope of postjudgment discovery is very broad to permit a judgment creditor

to discover assets upon which execution may be made." *Id.* at 172. Under Rule 69(a)(2), the United States Supreme Court has explained that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014).

And the United States Court of Appeals for the Fifth Circuit has held that "[t]he pretrial rules governing discovery apply" to Rule 69(a)(2) post-judgment discovery, *Mitchell v. Sizemore*, 536 F. App'x 443, 444 (5th Cir. 2013), and "Rule 621a of the Texas Rules of Civil Procedure, like Federal Rule 69, makes post-judgment discovery coextensive with pre-trial discovery," *Natural Gas*, 2 F.3d at 1405-06. For example, Federal Rules of Civil Procedure 26(b)(1) and 26(b)(2) apply to post-judgment discovery conducted under federal law and "permit the district court to limit discovery." *Mitchell*, 536 F. App'x at 444. And Federal Rule of Civil Procedure 45 applies to post-judgment discovery under Rule 69(a)(2). *See Natural Gas*, 2 F.3d at 1406.

Under Rule 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to ... produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Federal Rule of Civil Procedure 45(c)(2)(A) provides that "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). And, under Federal Rule of Civil Procedure 45(a)(4), "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of

premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4).

Under Federal Rule of Civil Procedure 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1); *see also Am. Fed'n of Musicians of the U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 57-59 (N.D. Tex. 2015).

And Federal Rule of Civil Procedure 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who

is neither a party nor a party's officer from significant expense resulting from compliance." *Id.*

Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *See* FED. R. CIV. P. 45(d)(2)(B)(ii); *Am. Fed'n*, 313 F.R.D. at 44. On the other hand, "[t]he failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Am. Fed'n*, 313 F.R.D. at 43 (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 45(d), "[e]ither in lieu of or in addition to serving objections on the party seeking discovery, a person can 'timely' file a motion to quash or modify the subpoena" under Federal Rule of Civil Procedure 45(d)(3)(A). *In re Ex Parte Application of Grupo Mexico SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, No. 3:14-mc-73-G, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015), *aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016); *accord Monitronics Int'l, Inc. v. iControl Networks, Inc.*, No. 3:13-mc-134-L-BN, 2013 WL 6120540, at *1 (N.D. Tex. Nov. 21, 2013) ("Rule 45 does not define a 'timely motion' but does provide that, if the subpoenaed party chooses to serve objections instead of moving to quash, '[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.' FED. R. CIV. P. 45(c)(2)(B)."); *cf. Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 451 (N.D. Tex. 2015). Under Rule 45(d)(3)(A), "[o]n timely motion, the court for the

district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). Thus, "[i]n the majority of cases, a person – whether a traditional party (i.e., a plaintiff or defendant) or a non-party – waives objections if he/she/it fails either to serve timely objections on the party seeking discovery or to file a timely motion with the court." *Grupo Mexico*, 2015 WL 12916415, at *3.

On a Rule 45(d)(3)(A) motion to quash or modify a subpoena, the moving party has the burden of proof. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Under federal discovery law, on a motion asserting undue burden, "[t]he moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams*, 178 F.R.D. at 109 (internal quotation marks omitted)). "The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015). "Whether a burdensome subpoena is reasonable must be determined according to the

facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

And, under federal law, when "a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1), as amended effective December 1, 2015, provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). "Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited." *Am. Fed'n*, 313 F.R.D. at 45 (internal quotation marks omitted).

### Discussion

The Subpoena was properly issued by the this Court under Federal Rule of Civil Procedure 45(a), as the court where this enforcement proceeding is pending. *See* FED. R. CIV. P. 45(a)(2) ("Issuing Court. A subpoena must issue from the court where the action is pending.").

The Subpoena commands Mrs. Gilbert "to produce at the time, date, and place set forth below" – specifically, at Edgefield's counsel's office in Dallas, Texas – certain identified categories of "following documents, electronically stored information, or objects." Dkt. No. 15 at 4 of 85. Because the Subpoena requires compliance in Dallas, the Gilberts properly filed their Motion to Quash in this Court, which, as required by Rule 45(d)(3), is the court in the district where compliance with the Subpoena is required. *See* FED. R. CIV. P. 45(d)(3)(A); *accord CSS, Inc. v. Herrington*, No. 3:17-mc-71-N-BN, 2017 WL 4750707 (N.D. Tex. Oct. 20, 2017).

A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a

motion to quash or modify under Rule 45(d)(3) if he has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008). The Court finds – and Edgefield does not contest – that Mr. Gilbert has a sufficient interest in the materials sought by the Subpoena from his wife to have standing to jointly file the Motion to Quash with Mrs. Gilbert.

The Gilberts argue that the Subpoena should be quashed because (1) the discovery should be conducted in Parker County; (2) marital property law makes most of the Subpoena's requests irrelevant; (3) the Subpoena seeks documents from Mrs. Gilbert that Edgefield already has or can seek from Mr. Gilbert or other sources; and (4) the Subpoena's document requests are too broad in both subjects and the time period requested.

And the Gilberts assert that the Court should order Edgefield under Rule 45(d)(1) to pay Mrs. Gilbert's expenses in moving to quash the Subpoena, because Edgefield did not take reasonable steps to avoid imposing undue burden or expense on Mrs. Gilbert.

The Gilberts further contend that, if the Court declines their request to quash the Subpoena, the Court should require Edgefield to modify its discovery requests under Rule 45(d)(3)(A)(iv) to specifically tailor them to seek information about assets that could be used to satisfy Edgefield's debt and to refrain from seeking information from Mrs. Gilbert that was already provided by Mr. Gilbert or seeking information relating to Mrs. Gilbert's assets which are not subject to seizure for Mr. Gilbert's debts.

More specifically, the Gilberts request that, if the Court is unwilling to quash the Subpoena entirely, Mrs. Gilbert should be ordered only to produce the documents they have offered in two letters sent to Edgefield's counsel to attempt to resolve this dispute, which are attached as Exhibits A and B.

I.     <u>The Gilberts' preference for Parker County is not a basis to quash the Subpoena.</u>

The Gilberts first assert that Edgefield's post-judgment "discovery should be undertaken through the lawsuits currently pending in Parker County, Texas, not in federal court in Dallas," because "Parker County is where (a) the [Gilberts] reside, (b) Edgefield's judgments were entered or are registered, (c) Edgefield has been conducting collection efforts since 2016, (d) Edgefield, and its predecessor in interest have taken extensive discovery from the judgment debtor, [Mr. Gilbert], and (e) Edgefield issued the very same post-judgment discovery request to Mrs. Gilbert the day before this action was commenced." Dkt. No. 2 at 1.

According to the Gilberts, "[e]ngaging in duplicative, burdensome discovery before this Court is blatant forum shopping in an attempt to harass Mrs. Gilbert"; "[e]ngaging in discovery in Parker County is not prejudicial to Edgefield, who, up until recently, has conducted all of its collection actions there, and it is less of a burden on the [Gilberts] and this Court"; and, "[s]ince there is another venue that is available to Edgefield, the [Gilberts] request that the Court require them to use it." *Id.* at 9.

The Gilberts contend that

Edgefield should conduct this post-judgment discovery in Texas state court in Parker County. Regions Bank, Edgefield's alleged assignor, has already domesticated Judgment Two in Parker County, and Judgment

One was entered in Parker County. Furthermore, Edgefield has engaged in very substantial post-judgment discovery and collection actions in Parker County over the last several years. That discovery included a notice of intent to issue a subpoena to Mrs. Gilbert to produce the exact same documents. However, for reasons which are unknown, Edgefield apparently decided not to serve the subpoena. There appears to be no reason for this case to have been commenced in Dallas federal court other than to increase cost to the [Gilberts]. For the reasons discussed in more detail below, the [Gilberts] request the Court quash the Subpoena and require Edgefield to proceed in Parker County.

....

This discovery should be conducted in Parker County, not only because that is where the Edgefield has conducted its discovery to date and because the [Gilberts] live there, but also because post-judgment discovery is more expeditiously handled in the state court of Parker County. Most judgment creditors who obtain federal judgments domesticate them in state courts to conduct post-judgment discovery and collection efforts. In this case, the original judgment creditor, Regions Bank did just that in 2010.

Dkt. No. 3 at 2, 3.

But, while acknowledging Rule 69(a)(2), the Gilbert's counsel admits that he "has been unable to find any authority for when a federal court should decline to preside over post-judgment discovery in favor of conducting the discovery through the state courts, especially when, as here, substantial discovery has been conducted in state court." *Id.* at 3.

And, where Edgefield has permissibly registered the Eastern District of Louisiana judgment in this Court under Section 1963 for purposes of post-judgment collection and is therefore entitled to pursue Rule 69(a)(2) post-judgment discovery, the Court is aware of no basis, either. And, as Edgefield notes, Section 1963 specifically states that "[t]he procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments." 28 U.S.C. § 1963.

The Court is unpersuaded by the Gilberts' analogizing reference to 28 U.S.C. § 1334(c)(1). In contrast to proceedings to which Section 1334(c)(1) might apply, there is no statutory basis for abstention in this context. Rather, as the Court has laid out above, the statute and Federal Rules grant judgment creditors broad rights to seek to enforce federal court judgments in multiple federal districts and to pursue post-judgment discovery in aid of the judgment or its execution.

The Court will not accept the Gilberts' invitation to quash the Subpoena in order to deprive Edgefield of those mechanisms in this Court because the Gilberts – including the judgment debtor Mr. Gilbert – would prefer to litigate post-judgment discovery issues in a different forum.

II.    The Gilberts' relevance and privilege objections do not support quashing the Subpoena.

The Gilberts then assert that "the documents requested in the Subpoena should be narrowed and specifically tailored to the facts of the matter to seek ... information about assets that could be used to satisfy Edgefield's debt, rather than the carpet-bombing approach of sending 112 broad requests for information about Mrs. Gilbert's separate and solely managed property." Dkt. No. 2 at 2.

Insofar as the Gilberts contend that the Subpoena should be quashed because it seeks documents that pertain to assets and accounts that Mrs. Gilbert asserts are her separate property and her solely managed community property, the Gilberts have not shown that post-judgment discovery regarding those assets – as opposed to any challenge that Mrs. Gilbert may or may not be able to raise to actual execution efforts

on those assets – is irrelevant for discovery purposes. Measured against the Gilberts'
relatively minimal statements in their affidavits, *see* Dkt. No. 4-6 at 48-53 of 53,
Edgefield has shown that the discovery that it seeks into the Gilberts' assets is at least
relevant to its collection efforts, including based on its allegations that Mr. Gilbert may
have transferred funds into accounts that may otherwise have been his wife's separate
property or solely managed community property, *see* Dkt. No. 14 at 8-16.

In connection with this argument, Edgefield asserts that it is proceeding under
Texas, not federal, law – but it is not clear to the Court from the record where and
when Edgefield first communicated that election to Mrs. Gilbert. *See id.* at 7.
Regardless, whether analyzed under Texas or federal law discovery standards, the
Gilberts' blanket relevance objection is not well-taken and is overruled.

Relatedly, insofar as the Gilberts contend that some or most of the Subpoena's
document requests may seek some information subject to the attorney-client privilege,
they have not met their burden to show that this is a basis to quash or modify the
Subpoena under Rule 45(d)(3)(A)(iii). Federal Rule of Civil Procedure 45(e)(2) governs
a non-party's withholding of information on the grounds of privilege and is
substantively identical to Federal Rule of Civil Procedure 26(b)(5)'s requirements as
to a responding party. *See Am. Fed'n*, 313 F.R.D. at 46. *Compare* FED. R. CIV. P.
26(b)(5) ("When a party withholds information otherwise discoverable by claiming that
the information is privileged or subject to protection as trial-preparation material, the
party must: (i) expressly make the claim; and (ii) describe the nature of the documents,
communications, or tangible things not produced or disclosed – and do so in a manner

that, without revealing information itself privileged or protected, will enable other parties to assess the claim."), *with* FED. R. CIV. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."). The Gilberts have the burden to make the required showing to establish the claimed privilege as to particular requests in support of a modification or quashal order, but, here, they have not provided the required level of detail and information to do so.

III.   <u>The Subpoena properly seeks discovery from Mrs. Gilbert despite other sources.</u>

The Gilberts further contend that "the documents requested in the Subpoena should be narrowed and specifically tailored to the facts of the matter to seek ... information not already provided by Mr. Gilbert or available from, the judgment debtor." Dkt. No. 2 at 2.

Here, too, Edgefield has sufficiently shown why, under broad post-judgment discovery standards, it appropriately seeks discovery directly from its judgment debtor's wife and why Edgefield is not required to rely only on discovery directly from Mr. Gilbert or his agents, affiliates, and banks.

Even fully considering the additional protections that the law may afford in discovery proceedings to third parties, the Court finds that the Gilberts have not demonstrated that Edgefield's seeking document discovery from Mrs. Gilbert through

its Subpoena is inappropriate or excessive because Edgefield can seek, and has sought, post-judgment discovery from the judgment debtor himself and other sources.

IV.    The Subpoena's document requests are not facially overbroad.

The Gilberts also assert that the Subpoena is facially overbroad because it "seeks 112 categories of documents" and "Edgefield has essentially propounded form post-judgment discovery more appropriately addressed to a judgment debtor to a non-judgment debtor." Dkt. No. 3 at 7. According to the Gilberts, "[a]s such, these requests are overbroad and are not tailored to the facts and circumstances of this case." *Id.*

As explained above, "[t]he scope of postjudgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made," *LeGrand*, 43 F.3d at 172, and "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive," *Republic of Argentina*, 134 S. Ct. at 2254. Neither the Federal Rules nor the applicable Texas rules place a fixed limit on the number of requests for production that a judgment creditor may serve. While the Court will address the Gilberts' objections to specific requests below, the Court finds that the Gilberts have not shown that the Subpoena subjects Mrs. Gilbert to an undue burden as facially overbroad based on the number of document requests.

The Gilberts further contend that "[e]ach of the requests asks for document for the past five years," which the Gilberts assert is too long a time period. Dkt. No. 3 at 7. They argue that, "[i]f the Subpoena is not quashed, it should be limited to two years unless Edgefield can show some need to a five-year look back." *Id.*

Edgefield responds that "the requests are limited to the past five years" and that, where Edgefield "has had a right to investigate Defendants' assets since the signing of the Louisiana Federal Judgment in 2010, five years of information requests are clearly limited and reasonable." Dkt. No. 14 at 17.

The Court determines that Edgefield has the better of this argument. The Gilberts offer no specific explanation as to why requests going back five years – as opposed to two years – are inappropriate, and the Court finds that the requested time period is reasonable in this context.

## V.     The Gilberts' challenges to specific document requests are largely unavailing.

The Gilberts also contend that the Subpoena's requests "are not drafted with particularity" and that, "[b]ased on their wording, the requests ask for a wide-range of documents, where "[e]ach request can be read to include a lot of irrelevant, privileged, and unnecessary information." Dkt. No. 3 at 7. And the Motion to Quash addresses specific objections to each document request in the Subpoena. *See* Dkt No. 2 at 10-67.

The Gilberts' objections to each of the requests based on (1) alleged irrelevance, (2) the availability of discovery from other sources, and (3) an allegedly overlong time period are overruled for the reasons discussed above.

And the Gilberts' unsupported and unexplained objections to various requests "to the extent" that documents responsive to the particular request may encompass privileged documents do not provide a proper basis for quashing or modifying the Subpoena, as discussed above.

But the Court finds that Requests XI.F (passports), XI.J (Mrs. Gilbert's professional licenses, XI.K (driver's licenses), and XI.L (birth certificates) seek documents that are not relevant or necessary to Edgefield's collection efforts, even in the context of broadly permissible post-judgment discovery. The Subpoena is QUASHED as to those requests.

The Gilberts' objections that responding to requests would be unduly burdensome for Mrs. Gilbert are overruled because they are not supported by any information or evidence quantifying the burden that responding would impose on her and are supported only by the Gilberts' arguments based on the breadth and number of the requests – which the Court has already found not to be facially overbroad. And, as Edgefield notes, Mrs. Gilbert, through her counsel, has already proposed agreements under which she would produce at least some of the materials responsive to the Subpoena's requests, further undermining the force of the Gilberts' undue burden objections.

Further, notwithstanding the Gilberts' objections to the contrary, the Court finds that the Subpoena's requests are reasonably particular in identifying what materials each request seeks.

The Gilberts also object to certain requests on the basis that Mr. Gilbert or Mrs. Gilbert do not have the kinds of assets or accounts or the like described by the document request. But that is not a proper basis for an objection but rather is a basis to respond to the request with an explanation that no responsive documents exist. And being required to do just that does not impose any undue burden on Mrs. Gilbert.

Neither does the Gilberts' offer to allow Edgefield to inspect the Gilberts' home excuse Mrs. Gilbert from the document discovery commanded by the Subpoena.

But the Court will order that – and correspondingly modify the Subpoena insofar as – Mrs. Gilbert is not required to produce the same documents that Mr. Gilbert has produced to Edgefield in other proceedings and may instead point to the exact location (presumably the Bates numbers) of the produced documents, identified individually, as produced to Edgefield in connection with its other collection matters.

The Court, for all the reasons explained above, otherwise DENIES the Gilberts' request to quash or modify the Subpoena.

## VI. Edgefield did not violate its duty to take reasonable steps to avoid imposing undue burden or expense on Mrs. Gilbert.

The Gilberts finally contend that the Court should "grant the [Gilberts] costs and expenses because Edgefield failed to fulfill its duty under Federal Rule of Procedure 45(d)(1) to refrain from sending unduly burdensome discovery requests to Mrs. Gilbert." Dkt. No. 3 at 2. According to the Gilberts, "[i]n this case, Edgefield did not discharge its obligation; rather, it issued 112 document requests to a non-judgment debtor, requesting information that it already has or that it could obtain from another source, or information that is irrelevant." *Id.* at 8. The Gilberts assert that Edgefield "never should have asked [Mrs. Gilbert] for things that are irrelevant, that Plaintiff does not need, that Plaintiff already has, that are too broad in time or number, that are not described with particularity, or that are otherwise burdensome." Dkt. No. 18 at 3. The Gilberts "ask the Court to set an evidentiary hearing to permit them to present

evidence of the expenses and costs incurred defending the Subpoena, including reasonable attorneys' fees." Dkt. No. 3 at 8.

The Court finds, under the particular circumstances here and based on the Court's findings and conclusions above, that Edgefield did not fail to comply with its and its attorneys' duty to take reasonable steps to avoid imposing undue burden or expense on Mrs. Gilbert in serving its Subpoena so as to justify a Rule 45(d)(1) sanction.

The Court DENIES Gilberts' request for sanctions against Edgefield under Rule 45(d)(1).

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendant Kenneth J. Gilbert and Non-Party Helen K. Gilbert's Motion to Quash Subpoena and Objection to Document Requests [Dkt. No. 2] and QUASHES the Subpoena served on Helen K. Gilbert by Plaintiff Edgefield Holdings as successor in interest to Regions Bank only as to Requests XI.F, XI.J, XI.K, and XI.L.

The parties will bear their own expenses, including attorneys' fees, in connection with the Motion to Quash Subpoena and Objection to Document Requests [Dkt. No. 2].

SO ORDERED.

DATED: March 2, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE